IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 6, 2001

## STATE OF TENNESSEE v. SEAN W. CONWAY

**Direct Appeal from the Criminal Court for Williamson County**
**No. I-243-1298     Timothy L. Easter, Judge**

_____

**No. M2000-01263-CCA-R3-CD - Filed May 8, 2001**

_____

The defendant was indicted for driving under the influence (DUI), driving while his alcohol concentration was .10% or more (DUI *per se*), and DUI, second offense. After a jury trial on DUI and DUI *per se*, the jury acquitted the defendant of DUI and was unable to reach a verdict on DUI *per se*. A second trial was held, and the jury convicted the defendant of DUI *per se*. The trial judge then found this conviction to be a second offense. In this appeal, the defendant alleges (1) the defendant's retrial for DUI *per se* violated the principles of double jeopardy; (2) the trial court erroneously admitted the results of the breath test and related evidence; (3) the trial court erroneously admitted testimony of the arresting officer concerning his encounters with other motorists charged with DUI; (4) the trial court improperly considered a prior conviction for enhancement of the defendant's sentence; and (5) the trial judge erroneously failed to recuse himself. Upon review of the record, we reduce the defendant's conviction to DUI, first offense, remand for resentencing, and affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part;**
**Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Lee Ofman, Franklin, Tennessee, for the appellant, Sean W. Conway.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Sharon Guffee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted by a Williamson County jury of driving with an alcohol concentration of .10% or more (DUI *per se*). After the defendant waived his right to a jury determination on whether this was a second offense, the trial judge found this to be a second offense. In this appeal, the defendant challenges his retrial as a double jeopardy violation, admission of the breath test results and related evidence, admission of prejudicial evidence relating to other motorists stopped by the arresting officer, use of the prior DUI conviction for enhancement purposes, and failure of the trial judge to recuse himself. Upon review of the record, we reduce the conviction to DUI, first offense, and remand for re-sentencing.

## BACKGROUND

The Williamson County Grand Jury returned a three-count indictment against the defendant for DUI, driving with an alcohol concentration of .10% or more (DUI *per se*), and DUI, second offense. In a suppression hearing, the defendant was unsuccessful in his attempt to suppress the breathalyzer results. In the first trial, the jury acquitted the defendant of count one, DUI, but could not reach a verdict as to count two, DUI *per se*. The defendant was retried, and the second jury convicted him of count two, DUI *per se*, and in a bench trial, the trial judge found this conviction to be a DUI second offense. This appeal followed.

## I. DOUBLE JEOPARDY

The defendant contends the principles of double jeopardy under the United States and Tennessee constitutions preclude a retrial on the charge of DUI *per se* following a mistrial, where in the same trial the defendant was acquitted of DUI. The defendant argues that DUI and DUI *per se* are the same offense, "carved out of the same transaction," and the state is estopped from retrying the defendant for DUI *per se* following an acquittal for DUI. We disagree.

### A. Background

Defendant was charged with two counts of DUI. The first count alleged a violation of Tenn. Code Ann. § 55-10-401(a)(1), driving while under the influence of an intoxicant. The second count alleged a violation of Tenn. Code Ann. § 55-10-401(a)(2), driving with an alcohol concentration at or above .10%. At the first jury trial, the defendant was acquitted as to count one, and the jury was unable to reach a verdict as to count two. Thereafter, the defendant was retried on count two and convicted of driving with an alcohol level at or above .10%.

The principles of double jeopardy embodied in the United States and Tennessee constitutions protect against a second prosecution for the same offense after acquittal; a second prosecution for

the same offense after conviction; and multiple punishments for the same offense. <u>State v. Beauregard</u>, 32 S.W.3d 681, 682 (Tenn. 2000).

We note that double jeopardy does not bar a retrial following a hung jury mistrial. <u>State v. Witt</u>, 572 S.W.2d 913, 916 (Tenn. 1978). Tennessee courts have held that the inability of the jury to reach a verdict permits the trial court to declare a mistrial and order a retrial. <u>State v. Smith</u>, 871 S.W.2d 667, 671 (Tenn. 1994). The failure of a jury to reach a verdict is not the equivalent of an acquittal and will not terminate the original jeopardy to which petitioner was subjected. <u>Richardson v. United States</u>, 468 U.S. 317, 325-26, 104 S. Ct. 3081, 3085-86; 82 L. Ed. 2d 242 (1984).

We agree that double jeopardy would preclude two separate judgments of conviction for both DUI and DUI *per se*. *See* <u>State v. Richard R. Powers, Jr.</u>, C.C.A. No. 02C01-9808-CC-00242, 1999 WL 222620, at *2 (Tenn. Crim. App. filed April 19, 1999, at Jackson). However, both counts can be determined by the jury without the requirement of an election. <u>State v. Delfro Willis</u>, C.C.A. No. 02C01-9810-CC-00336, 1999 WL 487032, at *2-3 (Tenn. Crim. App. filed July 12, 1999), *perm. to app. denied* (Tenn. 1999). The convictions would then merge into one judgment of conviction for DUI. *See* <u>State v. Cribbs</u>, 967 S.W.2d 773, 787-88 (Tenn. 1998) (although the defendant can not have separate judgments of convictions for both premeditated murder and felony murder, both counts should be submitted to the jury and then merged into one judgment of conviction).

DUI and DUI *per se* contain different elements. *See* Tenn. Code Ann. § 55-10-401(a)(1) and - 401(a)(2). An acquittal of either would not necessarily mean that the state could not establish the elements of the other.

Our supreme court has remanded cases for retrial on offenses the jury never considered due to sequential jury instructions. *See* <u>State v. Madkins</u>, 989 S.W.2d 697, 699 (Tenn. 1999); <u>State v. Burns</u>, 979 S.W.2d 276, 279 n.2, 292-93 (Tenn. 1998). We likewise see no double jeopardy violation when a defendant is acquitted of DUI and retried for DUI *per se* due to a hung jury.


## II.  BREATH TEST RESULTS

The defendant claims that the trial court erroneously admitted the breath test results and related evidence. We disagree.

### A.  Sensing Requirements

Our supreme court set forth the foundational requirements for the admittance of breath test results in <u>State v. Sensing</u>, 843 S.W.2d 412 (Tenn. 1992). As a prerequisite for admittance,

> the testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly

certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) that he followed the prescribed operational procedure, [and] (6) . . . the printout record offered in evidence . . . [was] the result of the test given to the person tested.

*Id.* at 416. A trial court's Sensing determination must be presumed correct on appeal unless the preponderance of the evidence is otherwise. State v. Edison, 9 S.W.3d 75, 79 (Tenn. 1999).

The defendant challenges the admission of the breathalyzer results claiming the state failed to satisfy Sensing factors one ("the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation"), two (the testing officer "was properly certified in accordance with those standards"), and three ("the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed"). Sensing, 843 S.W.2d at 416.

We initially note that the defendant raised this issue in the trial court through a pretrial motion to suppress. After the hearing, the Tennessee Supreme Court released its opinion in State v. Cook, which held that a defendant need not raise such an issue pretrial. 9 S.W.3d 98, 103 (Tenn. 1999). The supreme court ruled that the state's compliance with Sensing is a condition precedent to the admissibility of the breath test at trial, regardless of whether the issue is raised prior to trial. *Id.* at 102. Although both the defendant and the state have cited to the testimony at the suppression hearing, we will examine the trial testimony in order to ascertain whether the Sensing requirements were met.

At trial, Officer William Breedlove satisfied factor one by testifying that he performed the test in accordance with the standards and operating procedure promulgated by the forensic services division of the TBI. Sensing factor one requires that the officer attest that he or she conducted the breath test in accordance with the TBI standards. *See generally* State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995). Sensing does not require that the testing officer be familiar with the standards for testing the equipment. *See generally* Sensing, 843 S.W.2d at 416.

Officer Breedlove satisfied factor two by testifying that he was certified to operate the breathalyzer, and he offered a copy of his certification into evidence. This second Sensing factor requires that the officer be certified to operate the breathalyzer and does not require that he possess an awareness of the TBI standards for granting such certification. *Id.*

Sensing factor three was satisfied through Officer Breedlove's testimony in which the TBI's Forensic Services Division's certification letter of the breathalyzer was admitted. The certification

indicated the machine was tested August 4, 1998, less than three weeks before defendant's arrest. Breedlove testified that the certification letter was posted in the vicinity of the breathalyzer, and it informed him that the breathalyzer had been properly tested and certified. Breedlove additionally testified that the breathalyzer gave him no indication of a malfunction.

Officer Breedlove's testimony satisfied the three disputed Sensing requirements, and the trial court properly admitted the results of the defendant's breathalyzer test.

## B. Scientific Acceptability of Breathalyzer

The defendant alleges the state failed to show that the breathalyzer was scientifically acceptable and accurate; therefore, expert testimony under Tenn. R. Evid. 702 was required. He asks us to "set aside the Sensing standards" since "he could not cross-examine the machine."

Sensing recognized the reliability of properly performed breath tests and relaxed the "rigorous prerequisites formerly required to authenticate the reliability of the scientific equipment." 843 S.W.2d at 416. Sensing eliminated the requirement that the state proceed with expert testimony under Tenn. R. Evid. 702, although the state is not precluded from introducing such expert testimony. State v. Deloit, 964 S.W.2d 909, 914-15 (Tenn. Crim. App. 1997); State v. John H. Childress, C.C.A. No. M1999-00843-CCA-R3-CD, 2000 WL 994364, at *3 (Tenn. Crim. App. filed July 7, 2000, at Nashville), *perm. to app. denied* (Tenn. 2001). Here, the Sensing requirements were met, and we are not at liberty to set aside the Sensing standards.

We also note that Sensing relaxed the evidentiary foundation needed for the admission of breathalyzer test results obtained from an Intoximeter 3000. 843 S.W.2d at 413-16. The instrument utilized in this case was the Intoximeter EC-IR. Nevertheless, this court concluded the Intoximeter EC-IR is as reliable as the Intoximeter 3000; thus, the Sensing foundational prerequisites apply to the Intoximeter EC-IR. State v. Korsakov, 34 S.W.3d 534, 540 (Tenn. Crim. App. 2000). We, therefore, conclude the Intoximeter EC-IR is scientifically acceptable and accurate and does not require expert testimony under Tenn. R. Evid. 702.

## C. Burden of Proof

The defendant alleges that the rebuttable inference of impaired driving in Tenn. Code Ann. § 55-10-408, triggered by a breathalyzer result of .10% or greater, unconstitutionally shifts the state's burden of proof to the defendant. Tenn. Code Ann. § 55-10-408 allows an inference of a violation of "[Tenn. Code Ann.] § 55-10-401(a)(1)" based upon an alcohol content of .10% or more for first offenders and .08% or more for second or subsequent offenders. The statute has no application to a prosecution for DUI *per se* under Tenn. Code Ann. § 55-10-401(a)(2), nor was the jury charged concerning this statute. Regardless, the statute does not unconstitutionally shift the burden of proof. State v. Robinson, 29 S.W.3d 476, 481-82 (Tenn. 2000).

The defendant further argues that since DUI *per se* requires proof beyond a reasonable doubt that the alcohol concentration is .10% or more, expert testimony under Tenn. R. Evid. 702 and 703 should be required. We do agree that Sensing addressed the admissibility of breath test results in the context of allowing a rebuttable inference that the defendant was sufficiently impaired to constitute a violation of Tenn. Code Ann. § 55-10-401(a)(1). 843 S.W.2d at 416-17; *see* Tenn. Code Ann. § 55-10-408(a). It did not address DUI *per se* under Tenn. Code Ann. § 55-10-401(a)(2) as this portion of the statute had not been enacted at the time of Sensing. *See* 1996 Public Acts, Chapter 915. The Sensing court specifically noted that "it is a rare case in which the *only* evidence introduced to establish that a suspect offender is under the influence is either a breath or a blood test." *Id*. at 416.

Nevertheless, the underlying rationale of Sensing is that, because the reliability of the intoximeter has been generally accepted in the scientific community, scientific or expert testimony is no longer a prerequisite to admission of breath test results. *Id*. Under this rationale we see no reason to require expert testimony for breath test results for DUI *per se*, while not requiring expert testimony to establish an inference for DUI by impairment. We find nothing in the constitution, statutes or rules that would require different treatment, and this court is not at liberty to engraft such a requirement. Thus, we decline defendant's invitation to require expert testimony in prosecutions for DUI *per se*.

## D. Certification Document

The defendant contends that the trial court erroneously admitted hearsay testimony through the officer concerning the TBI's certification of the breathalyzer. We disagree.

The Tennessee Code provides that "[t]he bureau, through its forensic services division, shall establish, authorize, approve and *certify* techniques, methods, procedures and *instruments for the scientific examination and analysis of evidence*, including blood, urine, breath or other bodily substances." Tenn. Code Ann. § 38-6-103(g) (emphasis added). The Tennessee Rules of Evidence specifically excepts from the hearsay rule public records "observed pursuant to a duty imposed by law as to which matters there was a duty to report." Tenn. R. Evid. 803(8). Our supreme court specifically held that the forensic services division's certification "conforms with the provisions of [the] Tennessee Rules of Evidence, 803(8) as an exception to the hearsay evidence rule." Sensing, 843 S.W.2d at 416. Sensing contemplates that the certified officer who performed the breath test will introduce the certification. Korsakov, 34 S.W.3d at 542-43. This issue is without merit.

## E. Restriction of Cross-Examination

The defendant claims that the trial court improperly restricted his cross-examination of the arresting officer's knowledge of the breathalyzer machine. We disagree.

A denial of the right to an effective cross-examination is "constitutional error of the first magnitude," which amounts to a violation of the defendant's right to a fair trial. State v. Forbes, 918

S.W.2d 431, 450 (Tenn. Crim. App. 1995). However, the propriety, scope, and control of the cross-examination of witnesses are within the reasonable discretion of the trial judge. State v. Rosa, 996 S.W.2d 833, 839 (Tenn. Crim. App. 1999). Furthermore, absent an abuse of discretion, appellate courts may not disturb the trial court's discretionary limitations on cross-examination. State v. Braga, 920 S.W.2d 227, 244 (Tenn. Crim. App. 1995).

The testing officer testified regarding the procedure for operating the machine. The officer further testified that no error messages were displayed. On cross-examination, the defendant inquired if the testing officer knew the technology behind the breathalyzer's electro-chemical fuel cell and whether the officer understood how the machine determined the results of the test. The trial judge sustained the state's objection.

In this case, the trial judge properly controlled the content of the defendant's cross-examination to avoid confusion of the issues and misleading of the jury. *See* Tenn. R. Evid. 403. The danger of confusing and misleading the jury was substantial because the testing officer is not required to possess knowledge of the scientific workings of the machine. *See* Sensing, 843 S.W.2d at 416. Such questioning on cross-examination would have wasted time and would have likely misled and confused the jury. Accordingly, the trial court properly limited the scope of the defendant's cross-examination.

## F. Log Entry

The defendant claims that the Williamson County Sheriff's Department's alcohol log entry was improperly introduced at trial through the business records hearsay exception. *See* Tenn. R. Evid. 803(6). Corporal Gray testified that she was the custodian of the records of the Williamson County Sheriff's Department and produced a log containing the entry pertaining to the defendant's breath test results. However, she was unsure of the person who made the entry and whether that person had a business duty to do so. Thus, the entry does not qualify under Tenn. R. Evid. 803(6) as a business record.

Although the alcohol log entry was erroneously admitted into evidence, it was clearly harmless. The defendant's name and his blood alcohol level were properly introduced through the testimony of Officer Breedlove. Accordingly, the erroneous introduction of the alcohol log entry was harmless.

## III. OFFICER'S TESTIMONY

The defendant contends that the trial court erroneously allowed the arresting officer to testify that in less than five of approximately 108 DUI arrests, the detainee admitted he or she was drunk. The defendant challenges this statement as irrelevant under Tenn. R. Evid. 401, unfairly prejudicial under Tenn. R. Evid. 403, and improper habit evidence under Tenn. R. Evid. 406. The state rebuts

the defendant's contention by claiming that the defendant opened the door to the disputed questioning during his cross-examination. We agree with the state.

During cross-examination, defense counsel asked the officer

"Would you agree after 108 DUI arrests . . . that it is important that you know how many drinks that he [the defendant] had? Would you agree that it would probably be important to know what [the defendant] had to drink? Would you agree that it would be important for you to know the drinking period? And you didn't ask him about the drinking period, did you? You didn't ask him how much he had to drink, did you?"

On redirect, the state inquired, "how many people when you stop them tell you, 'oh officer, I've had six drinks and I'm drunk?'" The officer replied that out of approximately 108 arrests, less than five made such admissions.

We conclude that the state's redirect examination was proper since the defendant opened the door to this line of questioning. *See* State v. Land, 34 S.W.3d 516, 531 (Tenn. Crim. App. 2000) (doctrine of curative admissibility permits state, on redirect, to allow witness to explain matters brought out during cross-examination). During cross-examination, counsel attacked the officer's failure to question the defendant about how much he had to drink. Therefore, the state was free on redirect to allow the officer to clarify his reason for not inquiring as to the exact quantity of alcohol the defendant ingested.

## IV. MULTIPLE OFFENDER STATUS

The defendant contends he was improperly considered a multiple offender under Tenn. Code Ann. § 55-10-403(a)(3). Specifically, the defendant contends he should not have been convicted of DUI, second offense, because his prior conviction for DUI occurred more than ten years before his current conviction. The defendant was convicted of DUI on January 4, 1990. The current offense was committed on August 23, 1998, and he was convicted of the current offense on January 27, 2000.

### A. Statutory Interpretation

Rules of statutory construction require that this court ascertain and give effect to the legislative intent without unduly restricting or expanding the intended scope of a statute. Seals v. State, 23 S.W.3d 272, 276 (Tenn. 2000). We should examine the natural and ordinary meaning of the statutory language within the context of the entire statute without forced or subtle construction that would extend or limit its meaning. State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000). Where an ambiguity exists in the statutory language, we must look to the entire statutory scheme in seeking to ascertain the true legislative intent. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).

Statutory construction should not render portions of the statute inoperative. State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995). Furthermore, criminal statutes are to be strictly construed against the state and in favor of the defendant. State v. Rogers, 992 S.W.2d 393, 400 (Tenn. 1999).

## B. Analysis

Tenn. Code Ann. § 55-10-403(a)(3) was amended in 1998, and the amendment became effective May 11, 1998. *See* 1998 Public Acts, Chapter 926. The current statute reads as follows:

> [A] person who is convicted of a violation of Tenn. Code Ann. § 55-10-401 shall not be considered a repeat or multiple offender and subject to the penalties prescribed in subsection (a), if ten (10) or more years have elapsed between such conviction and any immediately preceding conviction for a violation. *If, however, a person has been convicted of a violation of Tenn. Code Ann. § 55-10-401 within ten (10) years of the present violation,* then such person shall be considered a multiple offender and is subject to the penalties imposed upon multiple offenders by the provisions of subsection (a). If a person is considered a multiple offender under this subdivision, then every conviction for a violation of § 55-10-401, within ten (10) years of the immediately preceding violation shall be considered in determining the number of prior offenses, but in no event shall a conviction for a violation occurring more than twenty (20) years from the date of the instant conviction be considered for such purpose. (Emphasis added).

The first sentence clearly states that the ten-year time frame is measured from conviction to conviction without any reference to the date of commission of the offenses. The second sentence measures the ten-year period from the date of the prior conviction to the "present violation." At issue is whether "present violation" refers to the date of the offense or the date of the conviction. If the "present violation" refers to the date of the offense, this renders the first sentence of the statute totally inoperative and meaningless. We should not construe statutes to render a sentence inoperative. Turner, 913 S.W.2d at 160. We, therefore, conclude that the statute is ambiguous. Accordingly, we must ascertain the legislative intent and look to the entire statutory scheme. Owens, 908 S.W.2d at 926.

The prior statute provided as follows:

> For purposes of this section, a person whose convictions for violating the provisions of § 55-10-401 occur more than ten (10) years apart shall not be considered a multiple offender, and the penalties imposed upon multiple offenders by the provisions of subsection (a) do not apply to such person.

Tenn. Code Ann. § 55-10-403(a)(3) (Supp. 1997). Clearly, the former statute measured the ten-year time period from conviction to conviction without any reference to the date of commission of the

offenses. *See* <u>State v. Marvin E. Sizemore</u>, C.C.A. No. 03C01-9209-CR-00326, 1994 WL 369733, at *2 (Tenn. Crim. App. filed July 15, 1994, at Knoxville).

The current statute was enacted in 1998 and rewrote the entire subsection. *See* 1998 Public Acts, Chapter 926. We have examined the legislative history, including various discussions among legislators about the legislation prior to its enactment. We have found no indication that the legislature intended to amend the statute so as to change the method of calculating the ten-year period. Instead, the legislative history indicates that the legislative purpose of the current statute was simply to increase the reach of the statute as far back as twenty (20) years. Furthermore, the last sentence of the current statute clearly measures the twenty-year time period from the "date of the instant conviction."

In view of the ambiguity, we must construe the statute against the state and in favor of the defendant. <u>Rogers</u>, 992 S.W.2d at 400. Accordingly, we construe the statute, just as we did in <u>Sizemore</u>, to measure the relevant time periods from conviction to conviction without reference to the date of commission of the offenses.

This court has recognized an exception to measuring the ten-year time frame from conviction to conviction. In <u>State v. McKinney</u>, 929 S.W.2d 404, 406 (Tenn. Crim. App. 1996), which was decided under the prior statute, this court recognized the conviction to conviction calculation method as adjudicated by <u>Sizemore</u>. However, this court applied the "tolling statute by analogy" and tolled the ten-year period during the time the "defendant deliberately absented himself from the [court's] jurisdiction." *Id.*; *see* Tenn. Code Ann. § 40-2-103. In the case at bar, the state does not argue, nor does the record reflect, that defendant absented himself from the jurisdiction of the court. In fact, he was first tried in September 1999, within the ten-year time frame. However, that trial resulted in a hung jury. Thus, we see no basis for tolling the ten-year period from conviction to conviction in this case.

Since the present conviction occurred more than ten years after the prior conviction, the defendant was improperly declared to be a second offender. We remand for resentencing for DUI, first offense.

## V. RECUSAL

Defendant contends the presiding judge abused his discretion by refusing to recuse himself from defendant's trial. Defendant argues that the trial judge was the prosecutor who secured defendant's prior conviction for DUI. Thus, defendant contends that since the state sought a conviction for DUI, second offense based upon the prior conviction, the judge should have recused himself.

## A. Background

Defendant requested that Judge Easter recuse himself since the judge was the prosecutor on the defendant's prior DUI conviction. The motion was denied. Thereafter, the defendant raised this issue in his motion for new trial. At the hearing on that motion, Judge Easter stated that he remembered the prior conviction because the defendant's father was a court officer. However, the judge denied defendant's motion for new trial, stating that he felt he was fair and impartial and found nothing in the record to indicate the defendant had not received a fair trial due to his refusal to recuse himself.

## B. Standard of Review

A motion to recuse is addressed to the sound discretion of the trial court and will not be reversed unless "clear abuse" appears on the face of the record. Owens v. State, 13 S.W.3d 742, 757 (Tenn. Crim. App. 1999) (citations omitted).

Tenn. Sup. Ct. R. 10, Canon 3(E)(1)(a) and (b) provides as follows:

(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party . . . or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy . . . or the judge has been a material witness concerning it.

Article VI, § 11 of the Tennessee Constitution provides that a judge should not preside over a trial " in which he may have been of counsel, . . . except by consent of all parties." Similarly, Tenn. Code Ann. § 17-2-101(3) requires recusal when the judge "[h]as been of counsel in the cause" except by consent of all the parties.

## C. Analysis

The defendant has presented no evidence to demonstrate the trial judge's alleged bias or prejudice, and the defendant makes no specific allegations of impartiality other than the fact that the trial judge was the prosecuting attorney for the prior DUI conviction. Furthermore, the trial judge stated that even though he remembered the defendant's prior conviction, he felt he was fair and impartial. We also note that there were no evidentiary facts in dispute concerning the prior conviction. The only issue relating to the prior conviction was the proper calculation of the ten-year time period, which was purely a question of law. There is nothing in the record to indicate that the

trial judge was subjectively unfair or partial. Nevertheless, we must also determine whether recusal was objectively required. *See* State v. Connors, 995 S.W.2d 146, 149 (Tenn. Crim. App. 1998) (requiring judge to not only examine "subjective bias," but also whether impartiality might be reasonably questioned under an "objective standard"); *see also* J. Shaman *et al*, **Judicial Conduct and Ethics** § 4.01, p. 109 (3d ed. 2000) (Judges should "look to an external standard in addition to their subjective feelings to decide if disqualification is necessary. It thus takes into account that disqualification is required if there is an appearance of partiality to the reasonable observer, and it precludes a judge from avoiding recusal merely by avowing his or her impartiality.").

The defendant claims that Judge Easter's participation as a prosecutor in his prior conviction precluded his participation in the current trial, especially since his prior conviction was used to enhance the defendant's current conviction. However, in State v. Warner, 649 S.W.2d 580, 582 (Tenn. 1983), our supreme court held that the Tennessee Constitution did not require recusal where the judge was the District Attorney when defendant was convicted of two of the underlying offenses charged in the habitual criminal indictment. Additionally, the supreme court has limited the scope of Canon 3(E)(1)(b) to "the cause on trial . . . and not . . . prior concluded trials . . . ." State v. Smith, 906 S.W.2d 6, 12 (Tenn. Crim. App. 1995) (citing Warner, 649 S.W.2d at 581). The rationale of Warner and Smith also apply to the instant case. Here, the judge was involved in a prior concluded trial as a prosecutor, and the judge was not a material witness to any disputed facts concerning the prior conviction. Thus, we conclude that neither the Tennessee Constitution, Tenn. Code Ann. 17-2-101(3), nor Canon 3(E)(1) mandated that Judge Easter recuse himself in the instant case.

## CONCLUSION

After a careful review of the record, we reduce the conviction to DUI, first offense, and remand for resentencing.

_____
JOE G. RILEY, JUDGE